```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

ICORE NETWORKS, INC.,         )
                              )
     Plaintiff,               )
                              )
          v.                  )    1:08cv748 (JCC)
                              )
MCQUADE BRENNAN LLP, et al.,  )
                              )
     Defendants.              )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Brian McQuade's Motion to Dismiss or, in the Alternative, for Summary Judgment. For the following reasons, the Court will **deny** Defendant's Motion.

### **I. Background**

Plaintiff iCore Networks, Inc. ("iCore"), an internet phone company, filed a complaint (the "Complaint") against McQuade Brennan LLP ("McQuade Brennan LLP" or the "LLP"), an accounting firm, and a partner at McQuade Brennan LLP, Brian McQuade ("McQuade"; collectively, the "Defendants"). The Complaint, filed on July 18, 2008, alleged that the Defendants failed to provide adequate and proper accounting and other contracted-for services. On August 22, McQuade filed a motion to dismiss. After the motion was fully briefed and argued, the Court granted McQuade's motion to dismiss for failure to state a

1

claim and gave iCore leave to amend the Complaint.  *See* Order of Oct. 7, 2008.  iCore filed an amended complaint, which contained several new allegations with regard to McQuade, ten days later (the "Amended Complaint").  The facts alleged in the Amended Complaint are as follows.

McQuade Brennan LLP started work for iCore following preliminary negotiations in mid-2006.  On November 1, 2006, McQuade Brennan LLP and iCore entered into a written contract (the "Agreement") signed on McQuade Brennan LLP's behalf by McQuade.  The Agreement formalized earlier negotiations between McQuade Brennan LLP, represented by McQuade, and iCore, during which McQuade Brennan LLP agreed to provide a variety of accounting and other financial services to iCore.  The Agreement, which was signed some months after McQuade Brennan LLP actually began providing services to iCore, set a standard monthly fee of $20,000.  McQuade assumed responsibility for the performance of McQuade Brennan LLP required under the Agreement.

While negotiations were ongoing, iCore sought assurances from McQuade that the individual leading McQuade Brennan LLP's iCore accounting team was fully qualified.  During a meeting with a member of iCore's Board of Directors, McQuade stated that he had personally reviewed iCore's financial records and performed a reconciliation of previously-processed checks.  He assured the iCore board member that the work had been done

properly, the lead employee was fully qualified, and there were no problems with the employee's background.  McQuade reiterated these statements to an iCore executive during a telephone conversation.

Around August 2006, McQuade Brennan LLP began to embezzle funds from iCore by overcharging for services, charging for un-performed services, and forging and cashing company checks.  To conceal the embezzlement, an individual or individuals at McQuade Brennan LLP created false invoices and made alterations to iCore's books and records.  iCore became aware of the scheme around February 18, 2008.  It notified Defendants of the problems and engaged a forensic accounting firm to investigate.  The forensic accounting firm uncovered the means by which money was embezzled and also found that numerous other accounting functions were performed incorrectly.  To fix these problems, iCore hired a third accounting firm to restore its books and records.  McQuade Brennan LLP, in its answer to the Complaint, states that one William Rutledge ("Rutledge") carried out the embezzlement scheme, acted alone, and hid his criminal actions from McQuade Brennan LLP.  Defendants subsequently paid iCore approximately $457,000 in restitution.

In April 2008, iCore sent a demand letter to McQuade Brennan LLP setting out its losses, damages, and expenses.  iCore had determined that its total losses substantially exceeded the

amount of restitution paid.  It claims that $566,279.28 in forged checks were written and cashed, that it paid at least $378,000 for the defective service rendered by McQuade Brennan LLP, and that it has paid legal and accounting fees in excess of $390,000.  It also claims lost business opportunities and harm to its business reputation and goodwill.  Defendants responded to iCore's demand letter in May, but largely refused to meet iCore's demands beyond the $457,000 they had previously paid in restitution.

      iCore asserts five causes of action against McQuade Brennan LLP: (I) breach of contract; (II) conversion; (III) fraud; (IV) professional malpractice; and (V) breach of fiduciary duty.  The Amended Complaint names Brian McQuade as a defendant in Count IV (professional malpractice) and Count V (breach of fiduciary duty).  iCore asks for numerous damages, including the amount of money lost through forged and cashed checks (less the amount already paid in restitution); the amount it paid McQuade Brennan LLP in fees for services never rendered or rendered improperly; its related legal and accounting costs; at least $2,000,000 for damage to business reputation and lost opportunities; punitive damages; and other costs and interest.

      Alleging diversity jurisdiction, Plaintiff iCore filed the Amended Complaint on October 17, 2008.  On November 6, McQuade submitted a motion to dismiss or, in the alternative, a

motion for summary judgment, along with a supporting affidavit. iCore filed a Memorandum in Opposition and submitted its own affidavits to counter McQuade's testimony; McQuade then responded with a reply brief.  McQuade's motion is before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Along with his motion to dismiss, McQuade submitted an affidavit and billing records.  If the Court chooses to consider these documents, Rule 12(d) requires it to treat the motion "as one for summary judgment under Rule 56," in which case "[a]ll

5

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted). A "mere scintilla" of evidence is insufficient to overcome summary judgment. *Id.* at 248-52.

### III. Analysis

In granting McQuade's first motion to dismiss the claims against him, this Court held that District of Columbia law

6

governs McQuade's individual liability as a partner of the LLP. Mem. Op. of Oct. 7, 2008 ("Mem. Op.") at 5.  District of Columbia law shields partners from personal liability incurred by an LLP. "An obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership." D.C. Code § 33-103.06(c).  Thus, "[a] partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or so acting as a partner."  *Id.*

McQuade moves to dismiss Counts IV (professional malpractice) and V (breach of fiduciary duty) of the Amended Complaint, both of which assert claims against him in his individual capacity.  He argues that iCore has not alleged sufficient facts to support its legal claims against him.  The main issue here, as in the previous motion to dismiss, is whether iCore has alleged a duty on the part of McQuade that would allow him to be held liable in his individual capacity.  In the District of Columbia, the cause of action for both professional malpractice and breach of fiduciary duty requires an allegation of a duty owed by McQuade, in his individual capacity, to iCore. *See Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949) (setting out elements for professional malpractice by a lawyer); *see also Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000); *Shapiro,*

*Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 74-75 (stating the elements of both professional malpractice and breach of fiduciary duty).

In its earlier decision to grant McQuade's motion to dismiss, the Court found that, under District of Columbia limited liability partnership law, iCore had not sufficiently alleged an individual duty on the part of McQuade separate and apart from the duty of McQuade Brennan LLP.  Instead, the Complaint stated only the conclusory allegation that McQuade could be individually liable because he "assumed responsibility" for the LLP's performance of the Agreement.  Mem. Op. at 11 ("[t]he bare statement that someone assumed responsibility for another's performance in a way that creates a legal duty skirts the ultimate issue").  The Court acknowledged, though, that iCore had alleged accounting lapses sufficient to plead the remaining elements of professional malpractice and breach of fiduciary duty – namely, breach of duty, causation, and damages – if iCore could allege that McQuade was responsible for them in his individual capacity.  Mem. Op. at 7-8; *see* Compl. at ¶ 18; Am. Compl. at ¶ 21.

The Court allowed iCore to amend its Complaint to state allegations that would make the legal conclusion that McQuade "assumed responsibility" for the LLP's performance at least "plausible on its face."  *See Bell Atlantic Corp.*, 127 S.Ct. at

1974. The Amended Complaint contains three new paragraphs with allegations about individual actions taken by McQuade. *Id.* at ¶¶ 10-12. The question before the Court, then, is whether the allegations about McQuade's individual actions, when taken with the allegations in paragraph 21 regarding the purported accounting failures, are sufficient to allege a duty owed by McQuade that could make him individually liable, in whole or in part, for what happened to iCore.

iCore added several allegations about McQuade's involvement with the company in its Amended Complaint. Paragraph nine repeats the allegation that McQuade "assumed responsibility" for McQuade Brennan LLP's performance under the contract; it also fleshes out McQuade's role in the negotiations leading up to the Agreement. As explained earlier, the use of the unadorned phrase "assumed responsibility" is, by itself, insufficient to allege an individual duty. *See* Mem. Op. at 10-11. Paragraphs ten through twelve of the Amended Complaint contain new facts. They state that McQuade proposed the use of the McQuade Brennan LLP employee who went on to embezzle funds and that McQuade gave iCore assurances that the employee was qualified. They also allege that at one point, around the time that negotiations were occurring, McQuade checked the work previously performed by McQuade Brennan employees on the iCore account and told iCore that the work had been done properly.

iCore suggests that this new information suffices to allege an individual duty on the part of McQuade that places him outside the protection of the LLP form.  *See* D.C. Code § 33-103.06(c).  iCore argues that McQuade's review of the accounting work done by the employee who went on to embezzle money and his "endors[ement of] the employee's work, background, and qualifications . . . induced iCore to accept that employee and enter into the Agreement in reliance on his analysis, judgment, and representations."  Pl.'s Mem. in Opp'n at 5.

While the issue is close, the Court finds that the Amended Complaint, "liberally construed" in favor of iCore, alleges a duty on the part of McQuade in his individual capacity that could make him liable for at least some of the damage that occurred.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).  The Amended Complaint states that McQuade reviewed the work done by the alleged embezzler around the time that the embezzlement was ongoing, and that he assured iCore representatives that the work had been done properly.  Am. Compl. at ¶¶ 11-12.  McQuade's alleged assurances were given while he was negotiating a contract with iCore for long-term accounting services provided by the LLP.  *Id.* at ¶¶ 9-10.  While performing "check reconciliations" to verify the proper performance of LLP employees, as an accounting service to iCore acting as client, McQuade had a duty to act with reasonable care.  *See Cafritz v.*

*Corp. Audit Co.*, 60 F. Supp. 627, 631 (D. D.C. 1945) ("accountants . . . are bound in law to perform such services in an accurate and skillful manner") (quotation omitted), *see also R.I. Hosp. Trust Nat. Bank v. Swartz, Bresenoff, Yavner and Jacobs*, 455 F.2d 847, 851 (4th Cir. 1972) (stating general duty of accountants to act with reasonable care).  If he had such a duty, it is at least plausible that he breached that duty by failing to notice or disclose problems with the performance of his employees – problems which were allegedly ongoing around the time of the check reconciliation.  Additionally, McQuade may have breached his duty by failing to notice or disclose the myriad accounting problems detailed in paragraph 21 of the Amended Complaint.

Under the notice pleading standards of Rule 8, these allegations are sufficient to state a claim for relief.  Fed. R. Civ. P. 8(a).  One plausible interpretation of the allegations in the Amended Complaint is that McQuade knew that iCore was asking him to check the work of the LLP's employees because the company wanted to verify its accuracy before entering into the long-term Agreement.  At this point, the LLP was providing accounting services in a manner that the parties intended to codify in the Agreement.  Thus, the facts alleged, when assumed to be true and construed liberally in favor of iCore, support the proposition that McQuade owed a duty to iCore while acting as an accountant

11

for the company.  *See Hodge v. D.C. Housing Fin. Agency*, 1993 WL 433601, at *2 (D.D.C. Oct. 15, 1993) ("accountants were immune from liability unless the plaintiff's relationship with the accountant is 'so close as to approach that of privity.'") (quoting *Ultramares Corp. v. Touche*, 174 N.E. 441, 446 (1931)).[1]  Further, it may have been reasonable for McQuade to assume that the long-term engagement depended on the outcome of the check reconciliations and assurances McQuade provided.  Thus, there is at least a plausible allegation that McQuade's actions violated a duty of reasonable care and led, in whole or in part, to the damages suffered by iCore.  At this preliminary stage of the litigation, the Court will not dismiss the claim against McQuade for professional malpractice.

Likewise, based on the same facts and the statement in the Amended Complaint that iCore "placed special confidence" in McQuade, it would be premature to dismiss the breach of fiduciary duty claim at this early stage.  Am. Compl. at ¶ 46.  While "[c]ourts do not generally regard the accountant-client relationship as a fiduciary one," *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1356 (D. N.Y. 1982), accountants can be fiduciaries in the District of Columbia,

---

[1] The Amended Complaint also states that McQuade "breached [his] duty of care when [he] incompetently performed [his] duties under the Agreement."  Am. Compl. at ¶ 43.  The timing of the actions McQuade allegedly took and the signing of the Agreement is not clear from the face of the Amended Complaint.  While vague, Paragraph 43 is sufficient to allege that McQuade's duties arose or continued after the Agreement was signed.

12

depending on the facts and circumstances of their relationship with the wronged party.  *See Cafritz*, 60 F. Supp. at 631 (acknowledging a fiduciary relationship when an accounting party was entrusted with money or property).  If iCore can prove that it placed the kind of special confidence in McQuade that leads to a fiduciary relationship, McQuade's actions may have breached the fiduciary duty he acquired.

Under the governing District of Columbia law, iCore has alleged professional malpractice and breach of fiduciary duty on the part of McQuade.  Along with the Motion to Dismiss, McQuade moved, in the alternative, for summary judgment.  In support of this motion, he submitted an affidavit denying or explaining the additional allegations in the Amended Complaint.  Def.'s Mem. in Supp., Ex. A.  In response, iCore submitted the affidavit of the member of its Board of Directors who spoke with McQuade in his office and the affidavit of iCore's CEO, who had a telephone conversation with McQuade during which they discussed the performance of the McQuade Brennan accountant who subsequently embezzled money from iCore.  Am. Compl. at ¶¶ 11-12; Pl.'s Mem. in Opp'n, Exs. A-B.  These affidavits re-affirm the facts alleged in paragraphs ten through twelve of the Amended Complaint.  They directly contradict McQuade's affidavit, which asserts that the meetings, the check reconciliations, and the guarantees never occurred.  Thus, a genuine dispute of material fact exists, and

summary judgment would not be appropriate at this time.  *See Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979) ("[S]ummary judgment . . . may not be invoked where . . . the affidavits present conflicting versions of the facts which require credibility determinations.").  Summary judgment may be appropriate at the close of discovery, but the Court cannot grant it at this time.

### IV.  Conclusion

For these reasons, the Court will **deny** Defendant Brian McQuade's Motion to Dismiss or, in the Alternative, for Summary Judgment.

An appropriate Order will issue.

January 5, 2009                              /s/
Alexandria, Virginia                James C. Cacheris
                            UNITED STATES DISTRICT COURT JUDGE